UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MADELYN SANTIAGO,

     Plaintiff,

v.                                     Case No. 8:20-cv-1255-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

     Defendant.

_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1964, has a bachelor's degree, and has past relevant work experience as a payroll clerk and accounting clerk. (R. 28, 104, 347). In September 2017, the Plaintiff applied for DIB, alleging disability as of September 2016 due to anxiety, neuropathy, depression, osteoporosis, a frozen right shoulder, and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

stage two breast cancer that had been in remission for several years. (R. 104–05). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 119, 147).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in August 2019. (R. 35–67, 169–70). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 35, 41–61). A vocational expert (VE) also testified. (R. 61–66).

In a decision issued in July 2019, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in September 2016; (2) had the severe impairments of neuropathy, osteoporosis, carpal tunnel syndrome, complex regional pain syndrome, right shoulder adhesive capsulitis with status post manipulation under anesthesia procedures, and a history of breast cancer with status post bilateral mastectomies, reconstruction surgeries, and chemotherapy; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[2] (4) had the residual functional capacity (RFC) to perform a restricted range of sedentary work; and (5) based on the VE's testimony, could engage in her past relevant work. (R. 21–29). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 29).

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id*.; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's request for review.   (R. 1–8).
Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment . . . which has lasted or can be expected to last for a continuous period of
not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3]
A physical or mental impairment under the Act "results from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically
acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations
(Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r
of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.
§ 404.1520(a)(4)).[4]  Under this process, an ALJ must assess whether the claimant: (1)
is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe
impairment that meets or equals any of the listings; (4) has the RFC to engage in her
past relevant work; and (5) can perform other jobs in the national economy given her
RFC, age, education, and work experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d
1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)).  Although the claimant has

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect
at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.
11th Cir. R. 36-2.

the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence supports the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence."  *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  While a court will defer to the Commissioner's factual

findings, it will afford no such deference to her legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises two issues on appeal: (1) the ALJ erred by not addressing an opinion of one of the Plaintiff's physicians, Dr. Sherley Valdez Arroyo; and (2) the ALJ did not properly assess the Plaintiff's subjective complaints of pain and other symptoms.  Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds the Plaintiff's claims to be without merit.

A.

As noted above, at step four of the sequential evaluation process, an ALJ must determine the claimant's RFC and her ability to perform her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).  Medical opinions are statements from physicians or acceptable medical sources concerning what a claimant may still be able to do despite her impairments; whether the claimant is limited in her ability to perform various work activities; and whether she can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes."   20 C.F.R. § 404.1513(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was.  20 C.F.R.

5

§ 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. Consequently, the "treating source rule," which mandated that a treating physician's opinion be given significant deference unless there was good cause for discounting it, has been eliminated. *Yanes v. Comm'r, Soc. Sec. Admin.*, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam) ("In 2017, the SSA amended its regulations and removed the 'controlling weight' requirement for all applications filed after March 27, 2017."); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853, 2017 WL 168819 (Jan. 18, 2017).

In assessing the persuasiveness of a medical opinion under the amended Regulations, an ALJ considers the following factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c); *Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source has articulated record evidence bolstering his opinion, while consistency deals with whether a medical

6

source's opinion conforms to other evidence in the record. 20 C.F.R. §§ 404.1520c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to assess supportability and consistency but do not obligate him to explain how he evaluated the other three factors. 20 C.F.R. § 404.1520c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence buttresses a contrary finding. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, Dr. Valdez Arroyo, a neurologist, began caring for the Plaintiff in 2014. (R. 593). Throughout the course of the Plaintiff's tenure with Dr. Valdez Arroyo, neurological findings described the Plaintiff as experiencing weakness in her upper right extremities (which showed improvement over time), and some slight decrease in sensation in her right anterior chest wall, her right scapular region, and her lower right extremity. (R. 26). Later progress notes documented the Plaintiff as doing "well," although she still complained of feeling tired and slow. *Id.*

In addition to these findings, Dr. Valdez Arroyo authored a letter in May 2017 regarding the Plaintiff's continued neuropathic pain. Of import here, the letter stated that, following breast cancer and surgery, the Plaintiff:

developed severe intractable neuropathic thoracic wall pain, that has only been able to be controlled recently with multiple medications. She has had extensive neurological testing including nerve conduction studies, MRIs of the brachial plexus, shoulder, cervical spine, and even though her studies were negative, her symptoms were severe. The [Plaintiff] was tried on [certain medications], and [had] some improvement [in] her symptoms, but she still has residual neuropathic pain. It is very severe and can flare up sometimes, and is located in the same area. She is able to do her chores around the house, but is disabled to the point she cannot return to work as her prior position as a secretary.

This letter support[s] the fact that [the Plaintiff] still has neuropathic pain, she is stable with medications, but [this] is a condition that will never be completely resolved. She will not likely be able to return to work. She will have good days and bad days, and exacerbation of neuropathic pain that can be very severe to control. . . .

(R. 593).

In his decision, the ALJ reviewed Dr. Valdez Arroyo's above findings, including Dr. Valdez Arroyo's more recent treatment records, which reflected the Plaintiff's improved status, as well as her occasional bouts of fatigue and sluggish movement. (R. 26). The ALJ also referenced Dr. Valdez Arroyo's May 2017 letter, which he characterized as "concluding the [Plaintiff was] disabled and unable to return to work" and therefore as pertaining to "an issue reserved to the Commissioner." *Id.* (citation omitted).

Citing the amended Regulations, the Plaintiff now argues that the ALJ erred by failing to consider the persuasiveness of Dr. Valdez Arroyo's May 2017 letter, which— the Plaintiff maintains—constituted a medical opinion. (Doc. 21 at 8–10). In positing this argument, the Plaintiff acknowledges that Dr. Valdez Arroyo's statement that the

Plaintiff was "disabled" and "unable to return to work" related to a matter properly left to the Commissioner.[5]  *Id.* at 9–10.  The Plaintiff nonetheless asserts, however, that the ALJ should have addressed Dr. Valdez Arroyo's comments that the Plaintiff will "have good and bad days" and that the aggravation of her neuropathic pain "can be very severe to control."  *Id.*  This contention fails.

As discussed previously, a medical opinion under the amended Regulations pertains to what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in," among other domains, her ability to perform the physical, mental, and/or other demands of work activities, as well as her ability to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  Of relevance here, however, there is a category of "[o]ther medical evidence," which an ALJ is not required to evaluate for persuasiveness and which "includ[es] judgments about the nature and severity of [a claimant's] impairments, [her] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  *Id.* § 404.1513(a)(3); *see also Rivera v. Comm'r of Soc. Sec.*, 2021 WL 3602839, at *4 (M.D. Fla. Aug. 13, 2021) (citations omitted).

---

[5] This concession by the Plaintiff is well founded.  *See Jones v. Comm'r of Soc. Sec.*, 2021 WL 4352383, *5 (M.D. Fla. Sept. 24, 2021) (finding an ALJ does not have to consider or discuss a conclusion that the claimant was unable to work because this is an issue reserved for the Commissioner) (citing 20 C.F.R. § 1520b(c)); *Marshall v. Kijakazi*, 2021 WL 4168107, at *4 (M.D. Fla. Sept. 14, 2021) (stating that a healthcare provider's assertions a claimant is disabled are "'inherently neither valuable nor persuasive,' and the [ALJ] is not required to even comment on that evidence in the decision") (citing 20 C.F.R. § 404.1520b(c)).

Here, the Plaintiff does not cite any authority that the ALJ was required to parse out and separately discuss the two sentence fragments in Dr. Valdez Arroyo's May 2017 letter upon which she now relies. This deficiency is notable since it is clear from the ALJ's decision that he reviewed the entirety of Dr. Valdez Arroyo's neurological findings, a point which the Plaintiff does not appear to dispute.

Irrespective of this issue, Dr. Valdez Arroyo's remarks that the Plaintiff will have "good and bad days" and that her neuropathic pain could be "very severe to control" are fairly characterized as "other medical evidence," insofar as they relate to Dr. Valdez Arroyo's clinical determinations, the severity of the Plaintiff's impairments, and the Plaintiff's long-term prognosis rather than her ability to perform work-related activities. *See* 20 C.F.R. § 404.1513(a)(2)(i) (listing specific actions, such as a claimant's capacity to lift or stand, as examples of work-related activities); *Rivera*, 2021 WL 3602839, at *4 (finding a physician's certification that he was treating the claimant, that he recommended the claimant seek psychological evaluation, that the claimant suffered from side effects, and that the physician "consider[ed] the [c]laimant unable to work indefinitely" not to be a medical opinion); *Wood v. Comm'r of Soc. Sec.*, 2021 WL 2634325, at *5–6 (M.D. Fla. June 25, 2021) (deeming certain medical records not to constitute a medical opinion where they only stated, *inter alia*, that the claimant's pain was not adequately controlled) (citing 20 C.F.R. §§ 404.1513(a)(2)–(3); *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (per curiam)). Accordingly, the Plaintiff's first challenge fails.

10

B.

The Plaintiff's second challenge—that the ALJ did not properly consider the Plaintiff's subjective complaints of pain and other symptoms—is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict her capacity to work. 20 C.F.R. § 404.1529. The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial

11

evidence." [6] *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (per curiam)). The ALJ, however, "need not cite particular phrases or formulations" in performing this assessment, as long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain testimony, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)). A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is adequately bolstered by the evidence of record. *Foote*, 67 F.3d at 1562 (citation omitted).

At the hearing, the Plaintiff testified that she suffered from constant pain in her right arm and hand and that these symptoms began when she had surgery removing all of her lymph nodes to address her breast cancer. (R. 49). She reported her right hand swelling up, her right arm being weak, and a persistent tingling from her

---

[6] On March 16, 2016, Social Security Ruling (SSR) 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1 (S.S.A. Mar. 16, 2016). SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* The change in terminology, however, does not alter the substance of the Court's analysis. *See Yangle v. Comm'r of Soc. Sec.*, 2020 WL 1329989, at *4 n.2 (M.D. Fla. Mar. 23, 2020); *Waters v. Berryhill*, 2017 WL 694243, at *6 n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 693275 (S.D. Ga. Feb. 21, 2017).

neuropathy.  (R. 49–50).  She also stated that her pain increases when she lifts more than five pounds.  (R. 50–51).

As for her daily activities, the Plaintiff testified that, among other things, she typically exercises on a treadmill, performs stretching and other bodily movements prescribed by her physical therapist for her frozen right shoulder, walks her dog, cooks meals using a pressure cooker, and socializes with her family.  (R. 45–48).  She additionally acknowledged that she could do laundry if she uses a "reacher stick" to retrieve the clothes out of the dryer and that she and her husband go grocery shopping together each weekend.  (R. 43–44).

In his decision, the ALJ referenced the Eleventh Circuit's pain standard, along with his duty to account for all the Plaintiff's "symptoms and the extent to which th[o]se symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the [applicable legal requirements]." (R. 19–20) (citing of 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *1).  The ALJ also rendered an express credibility determination regarding the Plaintiff's subjective complaints, finding:

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record.

(R. 27).

In support of this assessment, the ALJ conducted a chronological review of the Plaintiff's medical records, beginning with her history of breast cancer and manipulation surgeries, the latter of which were aimed at treating the Plaintiff's right shoulder following the development of adhesive capsulitis. (R. 26). While discussing the Plaintiff's previously referenced neurological findings, the ALJ noted the Plaintiff's diagnoses of neuropathy and allodynia and the possibility she had complex regional pain syndrome as early as 2016. *Id.*

The ALJ highlighted, however, that an examination of the Plaintiff by her primary care provider was "within normal limits" and that the Plaintiff still "had normal strength, [a] full range of motion, and a normal gait." *Id.* The ALJ also observed that, although the Plaintiff's more recent neurological records revealed "some abnormalities," they continued to be "minimal" and demonstrated the Plaintiff's strength in all limbs to be five out of five, "except with some slight reduction in right hand grip and finger abductors." (R. 27). The ALJ additionally identified parts of the record that showed the Plaintiff's sensation was intact, her gait remained normal, and her apparently successful participation in physical therapy through her date last insured. (R. 26–27).

In light of this evidence and the other information before him, the ALJ found that the Plaintiff's subjective complaints and other symptoms were "only partially supported" due to inconsistencies between those allegations and the pertinent materials in the record. (R. 27). The ALJ pointed in this regard to, among other things, the documented improvement in the Plaintiff's condition, while also

concluding that her claimed activities of daily living counseled in favor of a limitation to light or sedentary work. *Id.*

Notwithstanding the ALJ's robust evidentiary recitation, the Plaintiff now argues that the ALJ's decision is not sufficiently bolstered by the record. (Doc. 21 at 12–15). To buttress this contention, the Plaintiff asserts that her physical examinations and treatment notes evidence she continued to experience neuropathic pain and other deficits, and that her daily activities were less significant than the ALJ suggested. *Id.* This argument is unavailing.

Essentially what the Plaintiff is asking the Court to do at this juncture is to re-weigh the evidence, which the Court cannot do. *See Carter*, 726 F. App'x at 739 (stating that a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence"). Instead, the Court's limited role on appeal is simply to decide whether the ALJ applied the proper legal standards and whether the ALJ's determination is supported by substantial evidence. 42 U.S.C. § 405(g); *Hargress*, 883 F.3d at 1305 n.2. Here, the ALJ engaged in a thorough analysis of the Plaintiff's medical records in connection with his evaluation of the Plaintiff's subjective complaints, and his subsequent credibility finding was adequately supported by specific examples from the record, which were inconsistent with the Plaintiff's reported symptoms. As a result, the Court will not disturb the ALJ's resolution of this issue. *Stowe*, 2021 WL 2912477, at *4 (declining to overturn the ALJ's credibility finding, noting that the ALJ identified discrepancies between the claimant's reported symptoms and his physician's notes) (citing *Foote*, 67 F.3d at 1561–62).

IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Defendant's favor

and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of March 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record